UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HANOVER INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:14-cv-288 |
| v. | ) | JUDGE CRENSHAW |
| | ) | |
| | ) | |
| JOHN E. CLEMMONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

Hanover Insurance Company ("Hanover"), brings this diversity action against its insured, John E. Clemmons, and parties allegedly injured by Clemmons's alleged tortious actions and professional negligence. Hanover seeks a declaration that it has no obligation under the legal malpractice insurance policy it issued to Clemmons to defend or indemnify him for claims arising from his administration of several estates.[1] (Doc. No. 1.) For the following reasons, the Court GRANTS Hanover's motions for summary judgment. (Doc. Nos. 29 and 32.)[2]

**I.     Undisputed Material Facts**

Clemmons was an estate lawyer who stole from his clients. (Doc. No. 33-8 at 1-3.) The Rutherford County Circuit Court first discovered his misappropriation, and the Probate Court of Davidson County discovered additional misappropriations and removed him as the conservator or administrator of various estates. (Doc. No. 33-8 at 2.) Clemmons pleaded guilty to theft for stealing

---

[1] The Court has entered a default judgment against Clemmons (Doc. No. 25) and judgment against Teresa Lyle, in her representative capacity as the administratrix C.T.A. of the estate of her mother, Nannie P. Malone, on claims for rescission and declaratory relief. (Doc. No. 55.)

[2] It is unclear to the Court why Plaintiff filed the same motion for summary judgment twice.

from the estates of Nannie Malone, William C. Link, and Donald E. Griggs. (Doc. No. 33-8 at 3.) He was sentenced to eighteen years in prison and is currently incarcerated. (Id.) The Board of Professional Responsibility of the Tennessee Supreme Court disbarred Clemmons retroactive to April 2, 2013. (Id. at 4.)

**The Hanover Policy**

Hanover issued a claims made and reported Lawyers Professional Liability Insurance Policy to Clemmons for the policy period of June 5, 2012 to June 5, 2013 (the "Policy"). The Insuring Agreement of the Policy states, in relevant part:

> We will pay on your behalf those sums which you become legally obligated to pay as damages and claim expenses because of any claim made against you arising from a wrongful act in the rendering of or failure to render professional services, provided that:
> 
> a. The wrongful act must have first occurred on or after the applicable retroactive date(s).
> b. You had no knowledge of facts which could have reasonably caused you to foresee a claim, or any knowledge of the claim, prior to the effective date of the policy.
> c. The claim or potential claim must first be made and reported to us in writing during the policy period or any extended reporting period, if applicable, and must arise from any wrongful act to which this policy applies.

(Doc. No. 1 at 35.)

The term "Claim" is defined as:

> 1. A demand or suit for money or services you receive, including any arbitration proceedings to which you are required to submit or to which you have submitted with our consent;
> 2. When you first receive oral or written information or have knowledge of specific circumstances involving a particular person or entity which could reasonably be expected to result in a demand or suit for money or services, including but not limited to when you first receive an oral or written request to notify us of a potential claim; or
> 3. When you first receive oral or written notification of any disciplinary proceeding.

(Id. at 37.) A "potential claim" is defined as "any wrongful act or any facts or other circumstances which may subsequently give rise to a claim." (Id. at 39.) A "wrongful act" is

2

defined as "any actual or alleged negligent act, error, omission, or misstatement committed in your professional services." (Id. at 40.) "Related claims" are "all claims arising out of a single or series of wrongful acts or arising out of related wrongful acts in the rendering of professional services." (Doc. No. 1 at 40.)

The Policy excludes claims "[b]ased upon or arising out of, or relating directly or indirectly to" and states, in relevant part:

> (1)(a) Any insured committing any intentional, dishonest, criminal, malicious or fraudulent act or omission;
>
> (1)(b) Any insured gaining any profit, remuneration or advantage to which such insured was not legally entitled; or
>
> ***
>
> (1)(h) Any actual or alleged conversion, commingling, defalcation, misappropriation, intentional or illegal use of funds, monies or property; or inability or failure to pay or collect any funds, notes, drafts, or other negotiable instruments; or any resulting deficiency or default. . . .

(Id. at 40.)

**The Link and Griggs Estates**

The Probate Court appointed Clemmons conservator over the property of William C. Link, and later administrator of his estate. (Id. at 11.) He was also trustee for the special needs trust for the benefit of Link's disabled daughter. The Probate Court ordered him to file an accounting. (Id. at 11-12.) Clemmons filed an accounting that the Probate Court found unacceptable. The Probate Court found Clemmons liable and subject to prosecution for the recovery of all unaccounted assets of the estate. He was removed as administrator and trustee. The court appointed Defendant, Paul A. Gontarek, as successor administrator to pursue all legal remedies to recover the assets of the estate from Clemmons. (Id.)

Clemmons also served as conservator over Donald E. Griggs and his property. (Id. at 16.) The Probate Court found Clemmons to be in willful and deliberate contempt of court for failing to

3

file a complete accounting as ordered. (Id. at 17-18.) The Probate Court removed Clemmons as conservator and appointed Gontarek as successor conservator. (Id.)

On November 14, 2013, Gontarek, filed suits against Clemmons and NGM Insurance in state court alleging breach of fiduciary duty and conversion/misappropriation of funds from the Link and Griggs estates (the "Link Action" and the "Griggs Action"). (Id. at 10-11, 15, 18.) Gontarek alleges that Clemmons breached his fiduciary duty to each estate by failing to account for assets of the estates and by misappropriating and converting estate funds for his own use. (Id. at 13-14, 15, 18.)

After Hanover filed the present lawsuit, Gontarek amended the Griggs and Link complaints to include a professional negligence claim based on Clemmons's failure to obtain a surety bond in the amount required by Tennessee Code Annotated Section 34-1-105 (Griggs Action) (Doc. No. 32-3 at ¶ 54) and Section 30-1-201(a)(2). (Link Action) (Id. at ¶ 37). Gontarek seeks actual and punitive damages, attorney's fees, costs and an award requiring Clemmons to forfeit any prior awards of compensation from each estate. (Id. at 13, 18.)

## II. Legal Standard

In deciding a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court is required to view "the facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014)).

"Issues regarding an insurer's duty to defend are matters of law and may be resolved by summary judgment when there are no genuine issues as to any material fact":

> Whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. The insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. In general, courts should construe insurance policies in the same manner as any other contract. An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. The policy language must be taken and understood in its plain, ordinary, and popular sense.

Lancaster v. Ferrell Paving, Inc., 397 S.W.3d 606, 609–10 (Tenn. Ct. App. 2011). "The '[insured] has the burden of proving that its damages are covered by the terms of the policy; the [insurer] in turn, must establish the applicability of any exclusions on which it relies.'" Founders Ins. Co. v. Bentley Entm't, LLC, No. 3:12-CV-01315, 2013 WL 3776311, at *12 (M.D. Tenn. July 17, 2013) (quoting Charles Hampton's A–1 Signs, Inc. v. Am. States Ins. Co., 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006)). When, as here, there is no dispute about the language of the Hanover Policy or the underlying complaints in this case, Hanover's duty to defend or indemnify Clemmons is properly resolved on summary judgment.

### III. Conclusions of Law

The Hanover Policy only covers legal malpractice claims for which the insured attorney "had no knowledge of facts which could have reasonably caused [him] to foresee a claim, or any knowledge of the claim, prior to the effective date of the policy." (Doc. No. 1 at 35.) Here, Gontarek asserts claims against Clemmons in the state court actions that fall into two categories. The first category are tort claims such as breach of fiduciary duty/misappropriation/conversion, based on Clemmons's intentional theft from the estates. The second category is professional negligence claims based on Clemmons's failure to obtain a surety bond in the amount required by statute.

The language in the Hanover Policy requires application of a mixed subjective/objective test. Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers, LLC, 483 Fed. Appx

5

241, 245 (6th Cir. 2012). "The question of what facts [the insured lawyer] knew is a subjective inquiry, while the question of whether [the insured lawyer] could reasonably foresee that these facts might give rise to a claim is an objective inquiry based on a 'reasonable insured' standard." Id.

**Misappropriation and Conversion Claims**

Gontarek does not dispute that having stolen from his clients, Clemmons could have reasonably foreseen that claims for conversion and misappropriation would be asserted against him. (Doc. No. 33 at 3.) Without question, Clemmons had a subjective and objective knowledge Hanover would not provide him insurance coverage for stealing from his clients' estates. Thus, those claims fall outside the scope of coverage because Clemmons had "knowledge of facts which could have reasonably caused [him] to foresee a claim." (Doc. No. 1 at 35.) In addition, the claims are excluded because they relate directly or indirectly to: (1) admitted fraudulent, dishonest and criminal acts barred under Exclusion 1(a); (2) personal profit from estates precluded under Exclusion 1(b); and (3) conversion, misappropriation, intentional or illegal use of estate funds excluded under Exclusion 1(h). (Id. at 13-18.)

**Negligence Claims**

Gontarek argues that because Clemmons could not reasonably foresee the professional negligence claims—failing to obtain sufficient surety bonds in the Link and Griggs estates in the amounts required by Tennessee Code Annotated Sections 30-1-201 and 34-1-104—those claims are covered by the Hanover Policy. (Doc. No. 33 at 3.) According to Gontarek, even if Clemmons had known prior to the inception of the Hanover Policy that the bonds he had obtained were lower than the amounts required by statute, these are the type of "wrongful acts" for which he would not necessarily have foreseen facing a professional negligence claim. (Id. at 4.) Gontarek reasons a

6

reasonable attorney could have reasonably believed that the Probate Court's orders approving the bonds would insulate him from claims of professional negligence. (Id. at 4-5.)

This argument fails. The Policy does not cover the negligence claims whether they are considered separate or "related" to the breach of fiduciary duty, conversion, and misappropriation claims. If they are considered separate claims, there is no coverage because they are untimely. The Hanover Policy is a "claims made and reported" policy, which provides coverage only for claims both first made and reported during the June 5, 2012 to June 5, 2013 policy period. Gontarek's professional negligence claims in the Link and Griggs actions related to the surety bonds were first made on April 14, 2014. (Doc. Nos. 32-2 and 32-3.) Thus, if the negligent failure to procure appropriate surety bond claims were considered separate "claims," they would be outside the scope of coverage because they were neither first made nor reported during the Hanover Policy period. However, if the claims cannot be separated, then they are "related claims" as defined by the Policy, which means the negligence claims are both outside the scope of coverage of the Policy and also subject to the three Policy exclusions for the same reasons as the breach of fiduciary duty/misappropriation/conversion claims.

The Court concludes that the negligence claims are excluded as related claims. In Schwartz Manes, interpreting similar policy language as the Hanover Policy, the Sixth Circuit rejected a law firm's argument that, even if it should have reasonably foreseen a lawsuit based on its failure to appear at a client's trial, it could not have reasonably foreseen the client's separate malpractice claims. Id. at 246. The Court held that the client's claims could not "be separated in that manner." Although the client brought multiple claims against the law firm, "all claims were based on [the firm's] alleged deficient representation of [the client] in her [legal matter] and each claim encompasses all [the firm's] alleged failures." Id. Thus, the Court concluded that the malpractice

7

suit against the insured law firm was not included within the scope of coverage under the insurance policy and affirmed the district court's granting of summary judgment in favor of the insurance company. Id. at 246-47.

Similarly, in Coregis Ins. Co. v. Lyford, 21 F. Supp. 2d 695, 699 (S.D. Tex. 1998), the court focused on the alleged injury. In that case, the court held that an insured lawyer's knowledge of an impending claim obviated the insurance company's duty to indemnify and defend him based on contract language that excluded coverage for acts committed on or before the policy's effective date that the attorney "knew or could have reasonable foreseen" might subject him to suit. The court explained:

> [T]he possibility that the plaintiff in the underlying suit might assert different claims than those [the insured] appears to have anticipated is irrelevant. In policy exclusion cases, *the nature of the injury*, rather than the "nomenclature" of the underlying claim, is the relevant issue.

Id. at 699 (emphasis added). Thus, the court granted summary judgment to the insurance company. Id. at 699-700. See also, Tewell, Thorpe & Findlay, Inc., P.S. v. Cont'l Cas. Co., 825 P.2d 724, 728 (1992) ("[T]he language of the exclusionary clause [in a law firm's professional liability policy] does not require the prediction of claims with absolute certainty or exactitude. Rather, the focus of the clause is on the underlying 'acts and omissions' that are the subject of a dispute which might give rise to a claim.").

Here, as in Schwartz Manes and Lyford and Thorpe, there is no coverage under the Hanover Policy because Clemmons knew the "nature of the injury" he had inflicted on his clients and that he would likely be subjected to lawsuits as a result, even if he did not correctly anticipate the precise nature of the claims that injured parties would raise. Thus, the negligence claims are outside the scope of coverage and are also barred by the Policy's exclusions because they arise out of the excluded conduct, either directly or indirectly. Northland Ins. Co. v. Stewart Title Guar. Co.,

8

327 F.3d 448, 456 (6th Cir. 2003) (holding in declaratory judgment case where insured professional converted client funds and client amended underlying complaint to assert claim for negligence in addition to embezzlement and conversion, "[t]here is no duty to defend or provide coverage where a complaint is merely an attempt to trigger insurance coverage by characterizing allegations of tortious conduct as 'negligent' activity.'"); Nat'l Reimbursement Grp., Inc. v. Gemini Ins. Co., No. 5:13-CV-145 MTT, 2013 WL 4495846, at *5 (M.D. Ga. Aug. 21, 2013) (finding claims that lawyer negligently supervised an employee who embezzled funds were excluded from legal malpractice policy because they "clearly" arose out of the excluded conduct).

Gontarek's argument that the failure to obtain a sufficient surety bond should be covered under the "concurrent cause doctrine" is unavailing. That doctrine provides that insurance coverage exists "where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 887 (Tenn.1991); accord Atl. Cas. Ins. Co. v. Cheyenne Country, 515 Fed. Appx 398, 402 (6th Cir. 2013) ("That doctrine requires insurers to defend their insured if any alleged cause of injury would be covered by the insurance policy, regardless of how many excluded causes are also in the complaint."). Gontarek argues that the primary cause of the injury to the Link and Griggs' estates—*i.e.*, not having surety bonds in the appropriate amount from which to recover losses—was Clemmons's professional negligence in failing to obtain those surety bonds in the amounts required by Tennessee law. (Doc. No. 33 at 7.) Gontarek concedes that Clemmons's thefts are indirectly related to the professional negligence claims because, if Clemmons had not stolen from the estates, there would not be a need to recover against his surety bonds. (Id.) However, Gontarek maintains that Clemmons's misappropriation and conversion did

not *cause* the estates to be deprived of surety bonds in the appropriate amount, but are simply the reason why recovery against the bonds is necessary. (Id. at 8.)

The Court disagrees. First, the concurrent cause doctrine does not apply here because the Hanover Policy does not limit the applicability of the exclusions to intentional conversion of funds, but instead broadly excludes coverage for any claims "based upon, arising out of, or related directly or indirectly" to the excluded conduct. (Doc. No. 1 at 40); see also Founders Ins. Co. v. Bentley Entm't, LLC, No. 3:12-CV-01315, 2013 WL 3776311, at *14 (M.D. Tenn. July 17, 2013) (rejecting application of concurrent cause doctrine because "[t]he policy language 'arising from' would include any negligence claim in the state court action"); Lancaster v. Ferrell Paving, Inc., 397 S.W.3d 606, 614 (Tenn. Ct. App. 2011) (noting the Tennessee Supreme Court has explained that "[t]he term 'arising out of the use' in liability policies has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'") (quoting Travelers Ins. Co. v. Aetna Cas. & Sur. Co., 491 S.W.2d 363, 365 (Tenn.1973)). Second, even if the concurrent cause doctrine applied in this case, the negligent failure to obtain the proper surety bonds was not a "substantial factor in producing the damage or injury" to the estates. Allstate, 811 S.W.2d 877.[3] The substantial cause of the loss to the estates was Clemmons's theft of funds. But for his theft, there would have been no "damage or injury" to the estates. The failure to obtain surety bonds in the proper amount did not create damage or injury, but instead limited the remedy available to the estates.

## IV. Conclusion

The foregoing the Court concludes that Hanover has no obligation to defend or indemnify Clemmons against the claims brought by the Link and Griggs estates because they are not included

---

[3] Gontarek's argument that the "nonexcluded cause"—the negligent failure to obtain appropriate surety bonds—was the "primary cause" of the injury to the estates relies on an incorrect legal standard.

10

within the scope of coverage under the Hanover Policy. Accordingly, Hanover's motion for summary judgment is GRANTED.

The Court will issue an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE